Slip Op. 13-19

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **DUPONT TEIJIN FILMS, MITSUBISHI POLYESTER FILM, INC., SKC, INC., and TORAY PLASTICS (AMERICA), INC.,** | |
| Plaintiffs, | |
| v. | Before: Jane A. Restani, Judge |
| **UNITED STATES,** | Court No. 12-00088 |
| Defendant, | |
| and | |
| **TIANJIN WANHUA CO., LTD., FUWEI FILMS (SHANDONG) CO., LTD., and SICHUAN DONGFANG INSULATING MATERIAL CO., LTD.,** | |
| Intervenor Defendants. | |

[In anti-dumping duty matter, Plaintiffs' motion for judgment on the agency record granted in part and denied in part.]

### OPINION AND ORDER

Dated: February 7, 2013

David M. Horn, Jeffrey I. Kessler, Patrick J. McLain, and Ronald I. Meltzer, Wilmer, Cutler, Pickering, Hale & Dorr, LLP, of Washington, DC, for the Plaintiffs.

Stuart F. Delery, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, and David F. D'Alessandris, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for the Defendant. Of counsel on the brief was Whitney Rolig, Attorney, U.S. Department of Commerce, of Washington, D.C.

David J. Craven, David A. Riggle, and Saichang Xu, Riggle and Craven, of Chicago, IL,

for the Intervenor Defendants.

Restani, Judge:  This matter is before the court on plaintiffs DuPont Teijin Films, Mitsubishi Polyester Film, Inc., SKC, Inc., and Toray Plastics (America), Inc.'s (collectively "Plaintiffs") motion for judgment on the agency record pursuant to USCIT Rule 56.2.  Plaintiffs challenge certain findings in the U.S. Department of Commerce's ("Commerce") final results rendered in the second anti-dumping review of polyethylene terephthalate film, sheet, and strip ("PET film") from the People's Republic of China ("PRC").  See Polyethylene Terephthalate Film, Sheet, and Strip from the People's Republic of China: Final Results of the 2009-2010 Antidumping Duty Review of the Antidumping Duty Order, 77 Fed. Reg. 14,493 (Dep't Commerce Mar. 12, 2012) ("Final Results").  Specifically, Plaintiffs argue that Commerce erred in selecting India as the surrogate country and in using JBF Industries Ltd.'s financial statement to calculate surrogate financial ratios.  Pls.' Rule 56.2 Br. in Supp. of Mot. for J. on the Agency R. ("Pls.' Br.") 1  2.  Defendant and Intervenor Defendants oppose Plaintiffs' motion.  See Def.'s Resp. to Pls.' Rule 56.2 Mot. of J. on the Agency R. ("Def.'s Br."); Resp. of Def.-Intrvns to the Mot. for J. on the Agency R. Submitted by Pls.  For the reasons stated below, the court remands in part and sustains in part the Final Results.

## BACKGROUND

In November 2008, Commerce published an anti-dumping duty order on PET film from the PRC.  See Polyethylene Terephthalate Film, Sheet, and Strip from Brazil, the People's Republic of China and the United Arab Emirates: Antidumping Duty Orders, 73 Fed. Reg. 66,595 (Dep't Commerce Nov. 10, 2008).  In November 2010, Plaintiffs and others requested an

administrative review of certain PRC companies exporting PET film to the United States

between November 1, 2009 through October 31, 2010, thereby triggering the second

administrative review of PET film from the PRC.  See Polyethylene Terephthalate Film, Sheet,

and Strip from the People's Republic of China: Preliminary Results of the 2009-2010

Antidumping Duty Administrative Review, 76 Fed. Reg. 68,140, 68,140 (Dep't Commerce Nov.

3, 2011) ("Preliminary Results").  Commerce selected Intervenor Defendants Tianjin Wanhua

Co., Ltd ("Wanhua") and Sichuan Dongfang Insulating Material Co., Ltd. ("Dongfang") as

mandatory respondents.  Id. at 68,141.

In April 2011, Commerce placed on the record a list of six countries (India,

Indonesia, Peru, Philippines, Thailand, and Ukraine) that Commerce's Office of Policy had found

to be economically comparable to the PRC.  See Office of Policy Memorandum of April 7, 2011,

P.R. 2/34 (Int_035634) at Attach. 1 at 2.  The report was based on the World Bank's World

Development Report 2010, which reported 2008 per capita gross national income ("GNI").  Id.

The Office of Policy Memorandum noted that "the disparity in per capita GNI between India and

China has consistently grown in recent years and, should this trend continue, the Department may

determine in the future that the two countries are no longer 'at a comparable level of economic

development' within the meaning of the statute."  Id. at Attach. 1 at 1.

On October 3, 2011, Plaintiffs timely submitted pre-preliminary determination

comments and placed on the record 2009 per capita GNI data from the World Bank's World

Development Report of 2011 (the "2009 GNI data").  Pet'rs' Pre-Preliminary Cmts. (Oct. 3,

2011), C.R. 2/Ext_030752 at 3.  Plaintiffs noted that the 2009 GNI data had been available since

the third week of April 2011 and argued that it was the best available information.  Id. at 3.

Plaintiffs also argued that the 2009 GNI data demonstrated that India was no longer economically

comparable with the PRC and that Commerce therefore should select Thailand as the surrogate

country.  Id. at 3  4; see Preliminary Results, 76 Fed. Reg. at 68,142.

On October 27, 2011, Commerce selected India as the primary surrogate country.

Selection of a Surrogate Country Memorandum (Oct. 27, 2011), P.R. 2/34 (INT_035634) at 1.

Commerce concluded that India was economically comparable under the statute because its

Office of Policy, relying on 2008 GNI data, had determined that India was economically

comparable to the PRC.  Selection of a Surrogate Country Memorandum 7.  Commerce noted

that both India and Thailand were economically comparable and were significant producers of

comparable merchandise but selected India because the record contained at least one usable

financial statement from an Indian company.  Preliminary Results, 76 Fed. Reg. at 68,142.[1]

After selecting India as the surrogate country, Commerce turned to the available

evidence from Indian companies in order to calculate surrogate financial ratios.  The record

contained the financial statements of two Indian companies:  JBF Industries Limited ("JBF") and

Polyplex Corporation Ltd. ("Polyplex").  Preliminary Results, 76 Fed. Reg. at 68,146.  In the

Preliminary Results, Commerce relied on the financial statement of Polyplex and declined to use

---

[1] Commerce found that the single financial statement on the record from an Thai company did not apportion raw material costs and consumable costs and thus, could not be used to calculate surrogate financial ratios.  Preliminary Results, 76 Fed. Reg. at 68,142.  No party has challenged this finding.  What steps Commerce takes to deal with insufficient record data from economically comparable countries is a separate issue from the initial finding of economic comparability.

the statement from JBF.  Id.  Commerce noted that both financial statements referenced a

countervailable subsidy program and thus, contained evidence of the receipt of subsidies, but

Polyplex's statement was preferable because it produced identical merchandise whereas JBF

produced comparable merchandise.  Id.

Before the Final Results, Respondents submitted additional Indian financial

statements from Garware Polyester Ltd. ("Garware"), Ester Industries Ltd. ("Ester"), Jindal Poly

Films Ltd. ("Jindal"), and JBF's 2010 financial statement,[2] resulting in a total of six Indian

financial statements from five different companies.  Issues and Decision Memorandum for the

Final Results of the 2009-2010 Administrative Review, A-570-924, ARP 11/1/2009-10/31/2010,

at 7 (Mar. 2, 2012) ("Issues and Decision Memorandum"), available at App. to Def.'s Resp. to

Pls.' Rule 56.2 Mot. for J. on the Agency R. ("Def.'s App."), Tab. 8, P.R. 2/105.  In the Final

Results, Commerce stated that upon closer inspection, the JBF statement did not include

evidence of the receipt of a subsidy whereas Garware, Ester, Jindal, and Polyplex all indicated

the receipt of a countervailable subsidy from the Duty Entitlement Passbook ("DEPB") scheme.[3]

77 Fed. Reg. at 14,494; Issues and Decision Memorandum 7.  Accordingly, Commerce relied on

the 2010-2011 financial statement of JBF only.  See Final Results, 77 Fed. Reg. at 14,494.

---

[2]  Commerce found that JBF's 2010-2011 statement was preferable to the 2009-2010
statement because it was more contemporaneous with the period of review.  Issues and Decision
Memorandum 6.  No party contests this selection.  The relevant language is the same in JBF's
2009  2010 and 2010  2011 financial statements.  See P.R. 1/121 at Ex. SV-3 at 30 (JBF 2009-
2010); Pet'rs' Submission of Publically Available Information to Value Factors of Production
("Pet'rs' Factors of Production Submission") (May 6, 2011), Def.'s App. Tab 7, P.R. 2/59 (JBF
2010-2011) at 31.

[3]  Commerce has found the DEPB scheme to be a countervailable subsidy.  See
Preliminary Results, 76 Fed. Reg. at 68,146.

Wanhua and Dongfang received rates of 8.42% and 10.87%, respectively.  Final

Results, 77 Fed. Reg. at 14,494.  Fuwei Films (Shandong) Co., Ltd. received a rate of 8.48%.  Id.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c).  The court will not

uphold Commerce's final determination in an anti-dumping review if it is "unsupported by

substantial evidence on the record, or otherwise not in accordance with law . . . ."  19 U.S.C.

§ 1516a(b)(1)(B)(i).

## DISCUSSION

I.      **Surrogate Country Selection**

Plaintiffs argue that Commerce lacks substantial evidence for its selection of India

as the surrogate country because the economic comparability determination was undermined by

the newly available 2009 GNI data.  Pls.' Br. 11.  Plaintiffs also argue that Commerce's attempt

to downplay the significance of the 2009 data is belied by Commerce's treatment of that data in

other reviews.  Pls.' Br. 13 14.  The Government argues that Commerce reasonably determined

that India and the PRC were economically comparable based on the 2008 data and that the

change in the World Bank data from 2008 to 2009 was not significant enough to demonstrate that

India was not economically comparable.  Def.'s Br. 10 11.  Plaintiffs' argument has merit.

In non-market economy ("NME") reviews, Commerce must select a surrogate

country that is "at a level of economic development comparable to that of the nonmarket

economy country" and is a significant producer of comparable merchandise.  19 U.S.C.

§ 1677b(c)(4).  In practice, Commerce employs a four-step process to select the primary

surrogate country.  First, Commerce's Office of Policy ("OP") develops a list of potential

surrogate countries that are at a comparable level of economic development based on "per capita

gross national income, as reported in the most current annual issue of the <u>World Development</u>

<u>Report</u> (The World Bank)."  Policy Bulletin 04.1, <u>Non-Market Economy Surrogate Country</u>

<u>Selection Process</u> (April 8, 2011), P.R. 1/93 at Attach. 2 at 2.  Commerce then narrows the OP

list down to a single surrogate country by identifying which countries contain producers of

comparable merchandise, which countries contain "significant" producers of comparable

merchandise, and finally, which country has the best available data.  <u>Id.</u> at 2  4.  Although the

OP's list is not exhaustive and parties may request that Commerce select a country not on the list,

Commerce generally selects a surrogate country from the OP list unless all of the listed countries

lack sufficient data.  <u>See id.</u> at 4; <u>see also</u> <u>Issues and Decision Memorandum for the Final Results</u>

<u>of the Second Administrative Review of Certain Steel Threaded Rod from the People's Republic</u>

<u>of China</u>, A-570-932, at 4 (Dep't Commerce Nov. 5, 2012), <u>available at</u>

http://ia.ita.doc.gov/frn/summary/PRC/2012-27438-1.pdf (last visited Feb. 4, 2013) ("[W]hen

selecting a primary surrogate country, the Department will normally look first to the list of

countries included in the surrogate country memo . . . .").

          Here, Commerce's selection of India as the surrogate country is not supported by

substantial evidence because Commerce based its decision on 2008 data, even though 2009 GNI

data were available on the record, and because Commerce failed to provide a reasoned

explanation for disregarding the 2009 data.  The 2009 GNI data were placed on the record before

Commerce made its surrogate country selection and Commerce has not suggested that it lacked

sufficient time to evaluate the 2009 data.[4]  Accordingly, both data sets were on the record and

equally available to Commerce.  The 2009 GNI data, however, were partially contemporaneous

with the period of review ("POR"), unlike the 2008 data.  Commerce has not explained why it

preferred to rely on the 2008 data when data partially contemporaneous with the POR were

available.

Commerce justified its decision to disregard the 2009 GNI data by noting that the

change in disparity between India's and the PRC's GNI between 2008 and 2009 was not

significant enough to render India not economically comparable to the PRC.  Issues and Decision

Memorandum 3 (noting its determination was not significantly affected by the 2009 data because

there was "only a small change in the proportionality of the per capita GNI of India in relation to

that of the PRC between 2008 and 2010.").[5]  Implicit in this explanation is Commerce's

_____

[4]  The same issue of whether Commerce may disregard updated World Bank data issued
after Commerce begins its surrogate country selection process but before the surrogate country is
selected was raised in Fujian Lianfu Forestry Co. v. United States, 638 F. Supp. 2d 1325, 1349
(CIT 2009).  In Fujian, Commerce did not rely on the updated data, stating that it had been issued
too late for consideration.  Id.  The court did not decide whether this was a reasonable
explanation because it found that plaintiffs had failed to make a developed argument in its brief
contesting Commerce's decision, and thus, had waived any objection.  Id.

[5]  The change in GNI between 2008 and 2009 for the PRC and India is:

|       | 2008 GNI data ($) | 2009 GNI data ($) |
|-------|-------------------|-------------------|
| PRC   | 2,940             | 3,590             |
| India | 1,070             | 1,180             |

Sources: Office of Policy Memorandum, P.R. 2/34 (INT_035634) at Attach. 1 at 2; World Bank,
World Development Report of 2011, available at Pet'rs' Pre-Preliminary Cmts., C.R.
2/Ext_031388 at Ex. 1.

(continued...)

conclusion that even if the 2009 data were used, India and the PRC would remain economically

comparable.  See id. at 3  4 ("[T]he disparity in per capital GNI between India and the PRC did

not grow so significantly during the POR that the two countries cannot be considered

economically comparable for the purposes of this administrative review.") (emphasis added).

Commerce did not provide any explanation as to why the change in

proportionality was too "small" to warrant consideration or affect the economic comparability

analysis, why Commerce chose to rely on a change in proportionality between two countries, or

how Commerce determines what is an acceptable change in proportionality of GNI.  Commerce

has previously warned that there is a point at which the disparity between India's and the PRC's

GNI will be too great for India to be considered economically comparable to the PRC.  See

Office of Policy Memorandum, P.R. 2/34 (INT_035634) at Attach. 1 at 1.  Commerce has not,

however, provided any explanation as to why the change in disparity between the 2008 and 2009

---

[5](...continued)
    Plaintiffs argue that the change in GNIs cannot reasonably be considered small because
there was a 28.9% growth in the absolute disparity between the two countries.  Pls.' Br. 18.
Defendant argues that Commerce's conclusion that the change between 2008 and 2009 data was
"small" is reasonable because India's GNI was 36.39% of China's in 2008 and only dropped to
32.87% in 2009 and because both countries fall within the range of "lower middle income"
countries on the World Bank's list.  Def.'s Br. 8.  Defendant's explanation still fails to explain
why change in proportionality is the appropriate measure.  Regardless, these explanations were
not provided by Commerce and cannot support its determination.
    The court is not in a position to make determinations in the first instance as to what
constitutes a significant change in GNIs among countries and how that change should be
measured, either by change in proportionality or change in disparity.  It is for this reason that
Commerce must "articulate a satisfactory explanation for its action including a rational
connection between the facts found and the choice made."  Motor Vehicle Mfrs. Ass'n of U.S. v.
State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (citation and internal quotations omitted).
Here, Commerce has failed to articulate an explanation for its finding that the change in GNIs
was insignificant or that India and the PRC would remain economically comparable under the
2009 GNI data.

data either does or does not rise to such a level.[6]  Commerce merely stated, without further

explanation, that the change in disparity was not significant.  Issues and Decision Memorandum

3.  Additionally, because the Office of Policy did not consider the 2009 GNI data, there is no OP

list on which Commerce can base its conclusion that India and the PRC remain economically

comparable even if 2009 data were considered.  Because it remains unclear whether India and the

PRC are economially comparable based on the 2009 data, Commerce's explanation that the 2009

GNI data represented only a small change and did not have a significant affect on its analysis is

conclusory and unsupported.

            Moreover, Commerce failed to address record evidence that undermines

Commerce's conclusion that the change in the disparity between India's and the PRC's GNI was

too insignificant to affect the economic comparability analysis.  When Plaintiffs placed the 2009

data on the record, Plaintiffs also included an OP list that relied on the 2009 data, issued one

month after the OP list issued for this review.  See Office of Policy Memorandum of May 25,

2011 in Sodium Hexametaphosphate from the PRC ("Sodium Hex Review"), available at Pet'rs'

Pre-Preliminary Cmts., C.R. 2/EXT_031388 at Ex. 2 at Attach. 1.  The Office of Policy in the

Sodium Hex Review did not include India on the list of countries that were economically

comparable to the PRC.  Id.  A country may be excluded from the OP's list for reasons other than

a lack of economic comparability, such as a lack of available data or because the country is an

---

[6]  Defendant argues that Commerce concluded that even though the disparity between India and China's GNI was large, the two countries' GNI were comparable within the context of global data.  Def.'s Br. 7 8.  Commerce's conclusion that the countries remain comparable was based on 2008 data, not 2009 data, and thus, this conclusion cannot serve to explain why the 2009 data could be disregarded as representing an insignificant change.

NME.  As Plaintiffs note, however, India has been the surrogate country of choice for the PRC

for years because there is generally sufficient, usable information available.  The exclusion of

India from the OP list is, therefore, probative evidence as to whether the 2009 data has a

significant effect on Commerce's economic comparability analysis.[7]  It may not be definitive

evidence that the two countries are no longer economically comparable, but it is record evidence

that detracts from Commerce's conclusion that the 2009 data represented an insignificant change

that did not affect Commerce's determination here.[8]

          Defendant argues that the exclusion of India from the OP list in the Sodium Hex

Review is irrelevant because the list is not exhaustive, and thus, India and the PRC may remain

economically comparable even though India is not on the OP list.  Def.'s Br. 7 8.  At the outset,

the court notes that this explanation was not provided by Commerce and thus, cannot support its

---

[7]  The parties disagree as to whether Commerce has continued to use India as the
surrogate country for the PRC since the 2009 data became available in April 2011.  Although not
on the record before Commerce, the court notes that since the 2009 data became available, the
Office of Policy has not included India on the list of potential surrogate countries for the PRC.
See, e.g., Issues and Decision Memorandum for the Final Results of the Second Administrative
Review of Certain Steel Threaded Rod from the People's Republic of China, A-570-932, at 3
(Dep't Commerce Nov. 5, 2012), available at
http://ia.ita.doc.gov/frn/summary/PRC/2012-27438-1.pdf (last visited Feb. 4, 2013) (stating that
OP list, dated Nov. 18, 2011, did not include India "because India's per capita GNI did not fall
within the range of countries proximate to the PRC."); Certain Activated Carbon From the
People's Republic of China: Preliminary Results of the Fourth Antidumping Duty Administrative
Review, and Intent to Rescind in Part, 77 Fed. Reg. 26,496, 26,498 (Dep't Commerce May 4,
2012) (OP list, dated July 25, 2011, does not include India).

[8]  This is not to say that Commerce was somehow "bound" by the Sodium Hex Review or
that the exclusion of India from the OP list constituted a finding that India and the PRC are not
economically comparable.  The exclusion is, however, evidence that the disparity between India
and the PRC's GNI has reached a level of disparity sufficient to render the countries not
economically comparable, contrary to Commerce's conclusion here.

determination.  Defendant's argument is also conclusory because it, like Commerce in its

determination, has no support for its statement that India and the PRC could remain economically

comparable under the 2009 GNI data.  Furthermore, the exclusion of India from the list is

relevant not only to whether India remains economically comparable to the PRC, but also to

whether Commerce's chosen procedures will result in the selection of India as the surrogate

country because Commerce generally selects a surrogate country from the OP list.  Thus, even if

India and the PRC remain economically comparable under some unknown methodology based on

the 2009 data, the Sodium Hex Review suggests that Commerce's chosen method for

determining economic comparability is unlikely to result in the selection of India.  Because the

record suggests that the use of 2009 GNI data may result in the selection of a surrogate country

other than India, Commerce's conclusion that the 2009 data did not present a significant enough

change to affect its analysis is unreasonable.[9]

        The court remands this issue for Commerce to either provide a reasoned

explanation as to why it may disregard the 2009 GNI data or, in the alternative, make a surrogate

country selection with the benefit of the 2009 data.

---

        [9]  Defendant argues that because Commerce has yet to make a formal finding that India
and the PRC are not economically comparable or that the disparity is too large, it is reasonable
for Commerce to select India as the surrogate country here.  Def.'s Br. 10.  The absence of a
finding that a country is not economically comparable does not qualify as substantial evidence to
show that the countries are in fact economically comparable.

**II.     JBF's Financial Statement**[10]

          Plaintiffs argue that JBF's financial statement indicates that it may have benefitted

from a countervailable subsidy and thus, Commerce should not have relied on it to calculate

financial ratios.  Pls.' Br. 20.  Defendant argues that Commerce's decision is supported by

substantial evidence because even though JBF had a policy for accounting for countervailable

subsidies, there was no indication that JBF received any benefit from the subsidy scheme.  Def.'s

Br. 13.

          In NME reviews, Commerce determines normal value by using the "best available

information" from the surrogate country to value the factors of production.  19 U.S.C.

§ 1677b(c)(1).  Commerce uses surrogate financial ratios to value the factors of production, and

calculates those ratios based on publicly available information from producers of identical or

comparable merchandise in the surrogate country.  See 19 C.F.R. § 351.408(c)(4).  It is

Commerce's policy, however, to reject financial statements of companies Commerce "has reason

to believe or suspect may have benefitted from countervailable subsidies, particularly when other

sufficient, reliable, and representative data are available for calculating surrogate financial

ratios."  Selection of a Surrogate Country Memorandum 9.

          The relevant language in JBF's financial statement is contained in two accounting

notes.  See Pet'rs' Factors of Production Submission, Def.'s App. Tab 7, P.R. 2/59 at 31.

_____

          [10]  Whether JBF's statement was the best available information may become moot
depending on Commerce's surrogate country selection on remand.  The court reaches this issue
in the event that India remains the surrogate country.  Moreover, whether JBF's statement is
distorted by subsidies is a relevant question on remand, especially when Commerce has rejected
all of the other Indian financial statements, because Commerce considers the extent of available
data when making the surrogate country selection among comparable economies.

Accounting note Q states: "Benefit on account of entitlement to Import duty free materials under

the 'Duty Exemption pass book Scheme/Focus Market Scheme/Focus Product scheme' is

recognized as and when right to receive are established as per the terms of the scheme."  Id.

Accounting Note N states "Turnover includes sale of goods, waste, export Incentive and excise

duty and are net of sales tax, value added tax, discounts and claims."  Id.  In the Final Results,

Commerce reversed its position and stated that upon closer inspection, the above language did

not indicate participation in the DEPB scheme.  77 Fed. Reg. at 14,494; Issues and Decision

Memorandum 7.  Commerce concluded that the language indicated how a benefit from the DEPB

scheme would be accounted for but did not indicate that any benefit had been received and thus,

there was insufficient reason to reject JBF's financial statement.  Issues and Decision

Memorandum 7.

          There are two distinct issues here.  First, is Commerce's conclusion that JBF's

statement was the best available information supported by substantial evidence?  Second, is

Commerce's conclusion that JBF's statement does not give rise to a belief or suspicious that JBF

may have benefitted from countervailable subsidies supported by the record?  These two issues

are distinct because even if JBF's statement indicated that it may have benefitted from

countervailable subsidies, Commerce could have reasonably concluded that it would be the best

available information if the other financial statements on the record were even more distorted.

See 19 U.S.C. § 1677b(c) (requiring Commerce to use the "best available information"); see also

Selection of a Surrogate Country Memorandum 9 (stating it is Commerce's policy to reject such

financial statements particularly when other sufficient, reliable, and representative data are

available).

As to the first issue, Commerce's finding that JBF's statement is the best available

information is supported by the record because the other financial statements clearly state that a

countervailable subsidy was received and accounted for in a specific line item.  Resp'ts'

Submission of Surrogate Value and Other Factual Information for Prelim. Determination

("Resp'ts' Surrogate Value Submission") (Nov. 28, 2011), P.R. 2/57 (Ext_040739) at Ex. SV-3

at 40 (Jindal) ("Export Incentive under [DEPB] amount to Rs. 152,977,025 . . . has been credited

in the account of raw material."); Id. at Ex. SV-2 at 27 (Garware) ("Export Benefits / Incentives

are accounted on accrual basis.  Accordingly, net estimated benefit aggregating to Rs. 510.21

Lakhs . . . against export effected during the period has been credited to Export Benefits earned

account which has been included in sales."); Id. at Ex. SV-1 at 57, 63 (Ester) (line item for

"DEPB provision written back" totaling Rs. 14.65 Lacs and stating export benefits under DEPB

"have been credited to Raw material and Chemical Consumption Account."); Pet'rs' Factors of

Production Submission, P.R. 1/118 at Ex. 27 at 62 (Polyplex) ("Import duty benefit under

[DEPB] Scheme and profit/loss on sale of DEPB aggregating to Rs.105.70 Lacs . . . are

accounted for on accrual basis and have been credited to Raw Materials Consumed.").  This

language demonstrates that Jindal, Garware, Ester, and Polyplex received countervailable

subsidies and credited those subsidies to the raw material account or other line items.  In contrast,

the language in JBF's statement does not state that a benefit from a countervailable subsidy has

been credited to any account or provide a specific amount of any subsidy benefit.  Instead, JBF's

financial statement merely indicates that export benefits from the DEPB scheme will be credited

"as and when" they are received.  Pet'rs' Factors of Production Submission, Def.'s App. Tab 7,

P.R. 2/59 at 31.  Thus, Commerce's determination that JBF's statement is the best available

information is supported by substantial evidence because it is the financial statement least likely

to have been affected by countervailable subsidies.

       The second issue of whether JBF's financial statement gives rise to a belief or

suspicion that JBF may have benefitted from a countervailable subsidy is less clear.  Plaintiffs

argue that the mere mention of a countervailable subsidy scheme is sufficient to indicate that JBF

may have benefitted from a subsidy.  Pls.' Br. 24.  Defendant argues that it was reasonable for

Commerce to interpret JBF's statement as indicating an accounting policy for recording exports

incentives, and because no such export incentives were recorded, there is nothing to suggest that

JBF may have benefitted from a countervailable subsidy.  Def.'s Br. 13  14.

       Commerce's finding in the Final Results that JBF's financial statement does not

suggest that a benefit from a countervailable subsidy may have been received is supported by

substantial evidence.  Although the statement mentions how countervailable subsidies would be

accounted for, the statement does not indicate that any benefit was received in the 2010-2011

fiscal year.  The notes state that a benefit will be recorded "as and when" such a benefit is

received, but no benefit attributed to the DEPB scheme is recorded in the financial statement.

See Pet'rs' Factors of Production Submission, Def.'s App. Tab 7, P.R. 2/59 at 31.  The lack of a

benefit recorded, when the company has a specific policy for recording such benefits, supports

Commerce's position.  Moreover, it is reasonable for Commerce not to reject financial

statements that include a policy for accounting for subsidies because the receipt of a subsidy, and

not the policy itself, causes the distortion in the financial statement that impacts the calculation of surrogate financial ratios.

Ultimately, Plaintiffs' argument fails because it requires the court to choose between two reasonable interpretations of the financial statement.  See Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966) ("[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence").  Reading accounting notes Q and N together, it may be reasonable to find that Turnover, as listed on the financial statement, has been calculated to include export incentives, and because the DEPB scheme is mentioned under export incentives, Turnover includes export incentives from the DEPB scheme.  It is also reasonable, however, for Commerce to read notes Q and N as boilerplate accounting policies that merely indicate when and how a DEPB benefit would be recorded, and thus, do not indicate that a DEPB benefit was included in the financial statement calculations such that it could distort the financial ratio calculations.

Plaintiffs also argue that Commerce's position in the Final Results is inconsistent with Commerce's treatment of Garware's 2008 financial statement in the first administrative review of PET film and Commerce's position in Tires from China.  Pls.' Br. 23 24.  Plaintiffs' arguments are not availing.  Garware's 2008 financial statement includes a general policy on how to account for subsidies, but, unlike JBF's statement, Garware's statement also included the actual dollar amount of the subsidies received.[11]  See P.R. 2/18 (EXT_030843) at Ex. 3 at 31.

_____

[11]  Plaintiffs' argument is based on the fact that Commerce, in the first administrative review, cited to the page of Garware's statement that contained the general accounting notes only and failed to cite to the page referencing the actual dollar amount of subsidies received from the
(continued...)

Thus, Garware's 2008 statement indicates a receipt of a subsidy whereas JBF's does not, and

Commerce was justified in treating the two statements differently.

        In <u>Tires from China</u>, Commerce rejected the financial statements of Balkrishna

and Apollo because the financial statements indicated that the raw material line item had been

calculated by including income earned pursuant to the DEPB scheme.  <u>Issues and Decision</u>

<u>Memorandum for the Antidumping Investigation of Certain New Pneumatic Off-the-Road Tires</u>

<u>from the People's Republic of China</u>, ("<u>Tires from China Issues and Decision Memorandum</u>"),

A-570-912, POR: 10/1/2006-3/31/2007 (July 7, 2008) at 38  39, <u>available at</u>

http://ia.ita.doc.gov/frn/summary/PRC/E8-16156-1.pdf (last visited Feb. 4, 2013).  Commerce

relied on the following language from Balkrishna's financial statement:

> Consumption of Raw Materials is arrived at after adjusting the difference between
> the costs of indigenous/duty paid imported raw materials and international cost of
> raw materials entitled to be imported/imported under Duty Exemption Scheme of
> the Government of India against direct/indirect exports made/to be made by the
> Company during the year.

<u>Id.</u> at 39.  The Apollo statement noted "Export Incentive in the form of Advance Licenses / credit

earned and Duty Entitlement Pass Book Scheme are treated as income in the year of export . . .

---

[11](...continued)
DEPB scheme.  In this review, Commerce explained that this failure was due to an oversight and
that Garware's financial statement was rejected because of evidence indicating the actual receipt
of a benefit.  <u>Issues and Decision Memorandum</u> 7 n.19.  The mere oversight of a page citation is
not sufficient to demonstrate an inconsistent application of policy by Commerce.  The record
demonstrates that Garware's 2008 statement includes a specific line item of a DEPB benefit
received whereas JBF's does not.  <u>See</u> P.R. 2/18 (EXT_030843) at Ex. 3 at 31 ("Export Benefits
/ Incentives are accounted on accrual basis.  Accordingly, net estimated benefit aggregating to
Rs. 752.27 Lakhs (Previous period Rs. 1,746.51 Lakhs) against export effected during the year
has been credited to Export Benefits earned account which has been included in sales.").  Thus,
Garware's 2008 statement indicates the receipt of a countervailable subsidy whereas JBF's
statement does not.

and are credited to the Raw Material Consumption account." Id. at 38.  As noted by Commerce,

these financial statements indicate that the raw material line item had been adjusted to account

for benefits obtained through the DEPB scheme.  There is no indication in JBF's statement that

the raw material, or any other line item, has been adjusted to include benefits from the DEPB

scheme.  Also in Tires from China, Commerce relied on the financial statement of companies

that mentioned the DEPB scheme but that did not indicate the receipt of any benefit from the

scheme.  See Tires from China Issues and Decision Memorandum 40 (finding insufficient

evidence to reject financial statement that referenced DEPB scheme but indicated zero revenue

had been received from the scheme).  Here, Commerce's approach of relying on JBF's statement

is consistent with Tires from China because although the DEPB scheme is mentioned, the

statement does not indicate that JBF benefitted from the scheme.  Thus, Commerce's

interpretation of JBF's statement is consistent with Commerce's policy and supported by

substantial evidence.

## CONCLUSION

The court remands for Commerce to provide a reasoned explanation for disregarding the 2009 World Bank GNI data or, in the alterative, to make a surrogate country selection with the benefit of the 2009 data.  The court sustains Commerce's finding that JBF's statement was the best available information and that JBF's financial statement should not be excluded based on the receipt of a countervailable DEPB subsidy.

Commerce shall file its remand determination with the court within 60 days of this date.  The parties shall have 30 days thereafter to file objections, and the Government will have 15 days thereafter to file its response.


                                                    /s/ Jane A. Restani
                                                    Jane A. Restani
                                                    Judge

Dated: This 7th day of February, 2013
        New York, New York