## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: THE HONORABLE JANE A. RESTANI, JUDGE**

_____

|  |  |
|---|---|
| DuPont Teijin Films, Mitsubishi Polyester Film, Inc., SKC, Inc., and Toray Plastics (America), Inc., | ) <br> ) <br> ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | ) Court No. 12-00088 <br> ) |
| United States, | ) <br> ) |
| Defendant, | ) <br> ) |
| and | ) <br> ) |
| Tianjin Wanhua Co., Ltd., Fuwei Films (Shandong) Co., Ltd., and Sichuan Dongfang Insulating Material Co., Ltd., | ) <br> ) <br> ) <br> ) |
| Defendant-Intervenors. | ) <br> ) |

_____ )

### PLAINTIFFS' COMMENTS ON THE FIRST REMAND DETERMINATION

Ronald I. Meltzer
Patrick J. McLain
David M. Horn
Jeffrey I. Kessler
WILMER, CUTLER, PICKERING,
  HALE and DORR, LLP
1875 Pennsylvania Avenue, NW.
Washington, DC 20006
(202) 663-6000

*Counsel for DuPont Teijin Films,*
*Mitsubishi Polyester Film, Inc., AND*
*SKC, Inc.*

June 14, 2013

## TABLE OF CONTENTS

I.      Commerce had ample time to consider the 2009 GNI data, and it should select
        Thailand as the surrogate country on that basis. .................................................................4

II.     Commerce's proposed "procedural" justification does not apply to the facts of this
        review........................................................................................................................................5

III.    Commerce's proposed "procedural" rationale violates the Administrative Procedures
        Act.............................................................................................................................................8

IV.     Conclusion ...........................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

Carlisle Tire & Rubber Co. v. United States, 634 F. Supp. 419 (CIT 1986).....................................9

DuPont Teijin Films et al. v. United States, 896 F. Supp. 2d 1302 (CIT 2013)......................... 1-4

Foshan Shunde Yongjian Housewares & Hardwares Co., Ltd., v. United States,
   896 F. Supp. 2d 1313 (CIT 2013) ...............................................................................................9

**Statutes**

19 U.S.C. § 1677b.................................................................................................................2, 5, 7

19 U.S.C. § 1516a........................................................................................................................5

**Regulations**

19 C.F.R. § 351.408(c)(1)..........................................................................................................10

**Other Authorities**

Polyethylene Terephthalate Film, Sheet, and Strip From the People's Republic
   of China, 76 Fed. Reg. 68,140 (Dep't Commerce Nov. 3, 2011) (prelim.
   determ.) ........................................................................................................................................5

Polyethylene Terephthalate Film, Sheet, and Strip from the People's Republic
   of China, 77 Fed. Reg. 14,493 (Dep't Commerce Mar. 12, 2012) (final
   determ.) ........................................................................................................................................1

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE JANE A. RESTANI, JUDGE**
_____

|                                                                                                                    |     |                     |
|--------------------------------------------------------------------------------------------------------------------|-----|---------------------|
| DuPont Teijin Films, Mitsubishi Polyester Film, Inc., SKC, Inc., and Toray Plastics (America), Inc.,               | )   |                     |
|                                                                                                                    | )   |                     |
| **Plaintiffs,**                                                                                                    | )   |                     |
|                                                                                                                    | )   |                     |
| **v.**                                                                                                             | )   | **Court No. 12-00088** |
|                                                                                                                    | )   |                     |
| United States,                                                                                                     | )   |                     |
|                                                                                                                    | )   |                     |
| **Defendant,**                                                                                                     | )   |                     |
|                                                                                                                    | )   |                     |
| **and**                                                                                                            | )   |                     |
|                                                                                                                    | )   |                     |
| Tianjin Wanhua Co., Ltd., Fuwei Films (Shandong) Co., Ltd., and Sichuan Dongfang Insulating Material Co., Ltd.,     | )   |                     |
|                                                                                                                    | )   |                     |
| **Defendant-Intervenors.**                                                                                         | )   |                     |
|                                                                                                                    | )   |                     |

_____ )

**PLAINTIFFS' COMMENTS ON THE FIRST REMAND DETERMINATION**

On behalf of DuPont Teijin Films, Mitsubishi Polyester Film, Inc., and SKC Inc. (collectively, "Petitioners" or "Plaintiffs"), we hereby timely submit these comments on the Department of Commerce's ("Commerce") Final Results of Redetermination Pursuant to Court Order, May 8, 2013, ECF No. 41 ("Remand Results"), filed by Commerce pursuant to DuPont Teijin Films et al. v. United States, 896 F. Supp. 2d 1302 (CIT 2013) ("DuPont"), in relation to the second (2009-2010) administrative review of polyethylene terephthalate (PET) film from China.  See Polyethylene Terephthalate Film, Sheet, and Strip from the People's Republic of China: Final Results of the 2009-2010 Antidumping Duty Review of the Antidumping Duty Order, 77 Fed. Reg. 14,493 (Dep't Commerce Mar. 12, 2012) ("Final Results").

In <u>DuPont</u>, the Court held that Commerce's finding that India and China were economically comparable was unsupported by substantial evidence. <u>DuPont</u>, 896 F. Supp. 2d at 1306-10. In particular, the Court found that Commerce had failed to take into account 2009 per capita GNI data from the World Bank's <u>World Development Report of 2011</u> (the "2009 GNI data"). <u>See</u> <u>Pet'rs' Pre-Preliminary Cmts.</u> (Oct. 3, 2011), C.R. 2/Ext_030752 at 3. Under Commerce's own methodology, as exhibited in an Office of Policy Memorandum based on the 2009 GNI data (<u>i.e.</u>, the <u>Sodium Hex OP Memo</u>), the 2009 GNI data indicated that India and China were no longer at a comparable level of economic development. <u>DuPont</u>, 896 F. Supp. 2d at 1307-08 ("even if India and the PRC remain economically comparable under some unknown methodology based on the 2009 GNI data, the <u>Sodium Hex Review</u> suggests that Commerce's chosen method for determining economic comparability is unlikely to result in the selection of India."); <u>Office of Policy Memorandum of May 25, 2011</u> in <u>Sodium Hexametaphosphate from the PRC</u>, <u>available at</u> <u>Pet'rs' Pre-Preliminary Cmts.</u>, C.R. 2/EXT_031388 at Ex. 2 at Attach. 1 ("<u>Sodium Hex OP Memo</u>"). Consequently, Commerce's selection of India as the surrogate country was unsupported by substantial evidence and otherwise contrary to law. <u>See</u> 19 U.S.C. § 1677b(c)(4) (generally requiring that the surrogate country be at a comparable level of economic development as the NME country under review, and that it be a significant producer of comparable merchandise). The Court remanded the issue of surrogate country selection to Commerce "to either provide a reasoned explanation as to why it may disregard the 2009 GNI data or, in the alternative, make a surrogate country selection with the benefit of the 2009 data." <u>DuPont</u>, 896 F. Supp. 2d at 1309-10.

On remand, Commerce attempted the first option – <u>i.e.</u>, to disregard the 2009 GNI data – but contrary to the Court's remand instructions, it failed to provide a reasoned explanation as to

why it may do so.  <u>Remand Results</u> at 1.  Therefore, Commerce's <u>Remand Results</u> fail to comply with the Court's order in <u>DuPont</u>, and they are unsupported by substantial evidence and otherwise contrary to law.

The <u>Remand Results</u> rely principally on two theories as to why Commerce may disregard the 2009 GNI data:  (i) The 2009 GNI data were "late-submitted" though not "untimely," and therefore the Department has not had enough time to consider them, <u>Remand Results</u> at 7, 14; and:  (ii) More generally, there is a certain unspecified point in an administrative review after which Commerce will not entertain new information related to the selection of a surrogate country.  <u>Remand Results</u> at 16 ("we have clarified that administrative obligations and our policy of identifying economically comparable countries early in a proceeding necessarily preclude the Department from considering factual submissions pertaining to that determination when they are filed late in the proceeding.").  Ostensibly, the basis for this policy is that after a certain point in the review, reconsidering the surrogate country selection would be impractical, because it would force the Department to re-initiate the surrogate country comment and deliberation period.  <u>Id.</u> at 7-8 (claiming that "it would not have been feasible to revisit the list of economically comparable countries, establish new comment deadlines, and analyze any data and comments that the Department would have had to accept in response to this new submission {of 2009 GNI data}.").

As explained below, however, neither theory constitutes a "reasoned explanation" as to why Commerce may disregard the 2009 GNI data in this administrative review.  In addition, explanation (ii) is inconsistent with the Administrative Procedures Act ("APA").  Therefore, Petitioners respectfully request that the Court remand to Commerce again with instructions to make a surrogate country selection with the benefit of the 2009 GNI data.  Such instructions would effectively require Commerce to select Thailand, because Thailand is the only other

country that satisfies the statutory requirements for surrogate countries for which surrogate value data are already on the record of this review.  See Polyethylene Terephthalate Film, Sheet, and Strip from the people's Republic of China: Preliminary Results of the 2009-2010 Antidumping Duty Administrative Review, 76 Fed. Reg. 68,140, 68,142 (Dep't Commerce Nov. 3, 2011) ("Preliminary Results"); Selection of a Surrogate Country Memorandum (Oct. 27, 2011), P.R. 2/34 (INT_035634) at 7-8, 10 ("Surrogate Country Selection Memo").

I.     **Commerce had ample time to consider the 2009 GNI data, and it should select Thailand as the surrogate country on that basis.**

Petitioners timely submitted the 2009 GNI data and the Sodium Hex OP Memo with our Pre-Preliminary Comments on October 3, 2011.  See DuPont at 3; Remand Results at 14-15 (correcting Petitioners' and Respondents' shared view, based on Commerce's draft remand results, that the 2009 GNI data were untimely submitted).  Commerce preliminarily selected India as the surrogate country 24 days later, on October 27, 2011; Commerce could have extended the deadline for issuing the Preliminary Results by at least an additional 30 days.  See Opinion at 4; Remand Results at 13.  Commerce published the final results 161 days after Petitioners submitted the 2009 GNI data, on March 12, 2012.  See Final Results.  Commerce filed its remand redetermination 493 days after Petitioners submitted the 2009 GNI data, on February 7, 2013.  See Remand Results.  If Commerce wanted still more time to consider the 2009 GNI data, Petitioners were willing to coordinate with Commerce to extend the deadline for submitting the Remand Results to the Court.  Pet'rs' Draft Remand Comments (Apr. 8, 2013), Rem. P.R. 6, p. 11, fn. 28 ("If the Department considers that it still needs more time to consider the 2009 GNI data, the *Sodium Hex Memo*, and the economic comparability of India and China, Petitioners would be glad to coordinate with the Department and the United States to move for

further extensions from the CIT.").  Defendant and Commerce did not solicit Petitioners' consent for such a motion.

In sum, Commerce had ample time to consider the 2009 GNI data, and there is no basis for Commerce to use time constraints as an excuse to ignore evidence on the record.  See 19 U.S.C. § 1516a(b)(1)(B)(i) (providing that the Court's standard of review is whether Commerce findings are "unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ."); 19 U.S.C. § 1516a(b)(2) (indicating that the "record" includes "a copy of all information presented to or obtained by the Secretary, the administering authority, or the Commission during the course of an administrative proceeding . . . .").  Commerce has a statutory obligation to select a surrogate country that is, inter alia, at a comparable level of economic development as China, and Commerce has voluntarily derogated from this obligation. See 19 U.S.C. § 1677b(c)(4).

In response to this argument (which Petitioners raised in our Draft Remand Results; see Remand Results at 13), Commerce reverts to its broader procedural explanation that "a key constraint preventing consideration of later-submitted GNI data is the time required for parties to review the list of potential surrogate countries . . . ."  Remand Results at 13.  Thus, Commerce appears to concede that it has had sufficient time to consider the 2009 GNI data.  Accordingly, the Court should remand to Commerce, because a procedural explanation that does not apply to the facts of this review cannot justify ignoring record evidence.

## II.    Commerce's proposed "procedural" justification does not apply to the facts of this review.

Commerce's proposed "procedural" rationale – i.e., that there is a certain unspecified point in an administrative review after which Commerce will not entertain new information related to the selection of a surrogate country – is incongruous with the facts of this review.  See

Remand Results at 11.  In particular, it incorrectly assumes that reconsidering the surrogate

country would require re-initiating the surrogate country selection process anew.  However, in

fact, this process would have been unnecessary in this review, because the parties had already

fully briefed Thailand's suitability as a surrogate country.  See, e.g., Pet'rs' Draft Remand

Comments (Apr. 8, 2013), Rem. P.R. 6 at 6-7; letter from law firm of Riggle & Craven to

Secretary of Commerce, Polyethylene Terephthalate (PET) Film from the People's Republic of

China; A-570-924; Rebuttal to Petitioners' Comments on Surrogate Country Selection (Apr. 29,

2011), P.R. 1/111; letter from Baker & McKenzie to Secretary of Commerce, Bemis Company,

Inc.'s Rebuttal Comments on Surrogate Country Selection in Polyethylene Terephthalate Film,

Sheet, and Strip from The People's Republic of China (Apr. 29, 2011), P.R. 1/113; letter from

law firm of Riggle & Craven to Secretary of Commerce, Polyethylene Terephthalate (PET) Film

from the People's Republic of China; A-570-924; letter from law firm of Riggle & Craven to

Secretary of Commerce, Rebuttal to Petitioners' Surrogate Value Submission of May 6, 2011

(May 13, 2011), P.R. 1/126.  Petitioners had recommended Thailand as the surrogate country and

placed Thai surrogate values on the record of the review at the earliest possible opportunity, and

therefore by October 3, 2011, Commerce was already fully apprised of the parties' views on the

suitability of Thailand as the surrogate country.  See memorandum from Import Administration

to All Interested Parties, Antidumping Duty Administrative Review of Polyethylene

Terephthalate Film, Sheet, and Strip from the People's Republic of China (Apr. 8, 2011), P.R.

1/93 at 2; letter from law firm of WilmerHale to Secretary of Commerce, Polyethylene

Terephthalate (PET) Film, Sheet, and Strip from the People's Republic of China: Choice of

Surrogate Country (Apr. 22, 2011), P.R. 1/107; letter from law firm of WilmerHale to Secretary

of Commerce, Polyethylene Terephthalate (PET) Film, Sheet, and Strip from the People's

Republic of China: Submission of Publicly Available Information to Value Factors of Production

(May 6, 2011), P.R. 1/118 at 1-10.

In response to this point (which Petitioners raised in our Draft Remand Results; see

Remand Results at 9), Commerce argues that rejecting India would have

> require{d} a new determination of comparable countries because the Department would
> consider that data for all of the available countries, not just those from the Department's
> original surrogate country selection list. . . . {T}he fact that Thailand may remain on a
> list based on 2009 GNI data is not a reason to assume that the Department will or should
> choose it as the primary surrogate country, because other countries may be found to
> supply better information once the comment and selection process is complete.

Remand Results at 12.  This passage seems to reflect a misperception about Commerce's own

legal obligations: that Commerce must select a surrogate country which is most comparable to

the NME country, and therefore is the best possible surrogate country.  However, as Commerce's

own Policy Bulletin No. 04.1 states:

> The statute does not require that the Department use a surrogate country that is at a level
> of economic development *most* comparable to the NME country and that is the *most*
> significant producer of comparable merchandise.  The statute requires only that the
> Department use a surrogate market economy country that is at a level of economic
> development comparable to that of the NME country and that is at a level of economic
> development comparable to that of the NME country and that is a significant producer of
> comparable merchandise.

Letter to Interested Parties re: Antidumping Duty Administrative Review of Polyethylene

Terephthalate Film, Sheet, and Strip from the People's Republic of China (Apr. 8, 2011), P.R.

1/93, Attach. 2, p. 2.  Therefore, ruling out India as a potential surrogate country does not

somehow incur a new obligation to determine whether Thailand is the best possible surrogate

country.  It was enough that Commerce found that Thailand satisfied the statutory requirements

under 19 U.S.C. § 1677b(c)(4), and that usable Thai surrogate values were on the record.  See

Surrogate Country Selection Memo at 7-8, 10.

If Commerce had begun considering the 2009 GNI data when it was submitted on October 3, 2011, and had extended the deadline for the preliminary results by an additional 30 days (as it acknowledges at could have; <u>Remand Results</u> at 8), then it could have reviewed the information and selected Thailand as the surrogate country, all before the preliminary results. Moreover, even if Commerce had wished to restart the surrogate country commenting process, it would still have had 54 days to do so before the preliminary results, and approximately five months before the final results. By comparison, the actual surrogate country and surrogate value comment process in this review only lasted 36 days, from April 7, 2011 to April 29, 2011. <u>See</u> Carole Showers, Memorandum to IA Office Director re: Request for a List of Surrogate Countries (Apr. 7, 2011), P.R. 1/92; letter from WilmerHale to Secretary of Commerce, Polyethylene Terephthalate (PET) Film, Sheet, and Strip from the People's Republic of China: Petitioners' Rebuttal Comments to Submissions of Publicly-Available Information to Value Factors of Production by Respondents Wanhua and Dongfang and Industrial User Bemis (May 13, 2011), P.R. 1/127 at 1. Thus, even if Commerce did in fact have to re-initiate the surrogate country and surrogate value comment process, and it had proceeded apace with the first surrogate country commenting process in this review without any effort to accelerate it, Commerce would still have had 18 days to consider all the comments and surrogate values before issuing the preliminary results (again, assuming Commerce had extended the deadline for the preliminary results by 30 days). Therefore, on the facts of this review, Commerce has no plausible procedural excuse for disregarding the 2009 GNI data.

III.     **Commerce's proposed "procedural" rationale violates the Administrative Procedures Act.**

Commerce's proposed procedural rationale – <u>i.e.</u>, that after a certain unstated point in the review, Commerce will no longer countenance evidence related to the selection of a surrogate

country – amounts to "a new, unannounced deadline," and therefore it violates the

Administrative Procedures Act (APA).  See Remand Results at 16.

     The APA states:

> (b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—
>> (1) a statement of the time, place, and nature of public rule making proceedings;
>> (2) reference to the legal authority under which the rule is proposed; and
>> (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved. . . .
>
> (c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose. . . .

5 U.S.C. § 553.  Thus, the APA requires the Department to give interested parties notice and an

opportunity to comment on "proposed rule making". See Foshan Shunde Yongjian Housewares

& Hardwares Co., Ltd., v. United States, 896 F. Supp. 2d 1313, 1323 (CIT 2013) ("Foshan

Shunde").  "Rule making" is defined as the "agency process for formulating, amending, or

repealing a rule," and a rule is further defined as "an agency statement of general or particular

applicability and future effect designed to implement, interpret, or prescribe law or policy."  5

U.S.C. § 551(4), (5); see Foshan Shunde, 896 F. Supp. 2d at 1323.  The Court has confirmed that

"the rights and duties of parties to antidumping and countervailing duty proceedings before

Commerce" do not fall into an excepted category under the APA.  Carlisle Tire & Rubber Co. v.

United States, 634 F. Supp. 419, 423 (CIT 1986).

     In this case, Commerce claims that there was a deadline for the submission of

information related to the economic comparability of potential surrogate countries that is earlier

than the general deadlines for the submission of factual information. Remand Results at 4 ("the

2009 GNI data was placed on the record too late during the administrative review to be

considered"); see 19 C.F.R. § 351.408(c)(1).  Accordingly, Commerce is implementing and enforcing a "rule" within the meaning of the APA.  Commerce never published a notice of proposed rule making in the Federal Register, nor did it notify Petitioners of this rule.  Therefore, by adopting and enforcing its rule limiting the time period for the submission of information related to the economic comparability of potential surrogate countries, Commerce has deprived Petitioners of the notice and opportunity to comment that is provided under the APA.

Commerce responds to this argument by arguing that its deadline for the submission of information related to the selection of a surrogate country is not "a new, unannounced deadline," but rather a "clarifi{cation}" of its existing policy to select the surrogate country "early in a proceeding".  Remand Results at 15-16.  However, the phrase "early in a proceeding" cannot reasonably be construed to encapsulate a policy of disregarding any evidence relating to the selection of a surrogate country after a certain point in an administrative review.  Indeed, Commerce is unable to point to any prior instance where it has articulated this interpretation of the phrase "early in a proceeding," nor did Commerce refer to this interpretation in the Final Results.  Therefore, it is doubtful that Commerce itself was aware of this interpretation at any point prior to the remand proceedings related to this action.  See Pet'rs' Draft Remand Comments (Apr. 8, 2013), Rem. P.R. 6, pp. 17-18.  Accordingly, the phrase "early in a review" does not discharge Commerce's notice obligations under the APA.

IV.     **Conclusion**

For the foregoing reasons, Petitioners respectfully request that the Court remand to Commerce with instructions to select Thailand as the surrogate country.

Respectfully submitted,

s/ Jeffrey I. Kessler
Ronald I. Meltzer
Patrick J. McLain
David M. Horn
Jeffrey I. Kessler
WILMER, CUTLER, PICKERING,
   HALE and DORR, LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000

*Counsel for DuPont Teijin Films,*
*Mitsubishi Polyester Film, Inc., and SKC,*
*Inc.*

Date: June 14, 2013