Slip Op. 14-86

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **DUPONT TEIJIN FILMS, MITSUBISHI POLYESTER FILM, INC., SKC, INC., and TORAY PLASTICS (AMERICA), INC.,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES,**<br><br>Defendant,<br><br>**TIANJIN WANHUA CO., LTD., FUWEI FILMS (SHANDONG) CO., LTD., and SICHUAN DONGFANG INSULATING MATERIAL CO., LTD.,**<br><br>Defendant-Intervenors. | Before: Jane A. Restani, Judge<br><br>Court No. 12-00088 |

## OPINION

[Commerce's second redetermination regarding calculation of normal value in non-market economy antidumping duty case sustained.]

Dated: July 22, 2014

Jeffrey I. Kessler, Ronald I. Meltzer, Patrick J. McLain, and David M. Horn, Wilmer, Cutler, Pickering, Hale & Dorr, LLP, of Washington, DC, for plaintiffs.

David F. D'Alessandris, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington D.C., for defendant. With him on the brief were Stuart F. Delery, Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director. Of counsel on the brief was Whitney M. Rolig, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington D.C.

David J. Craven and Saichang Xu, Riggle and Craven, of Chicago, IL, for defendant-intervenors.

Restani, Judge: This matter is before the court following a remand to the United States Department of Commerce ("Commerce") in Dupont Teijin Films v. United States, 931 F. Supp. 2d 1297 (CIT 2013) ("Dupont Teijin Films II"). Plaintiffs Mitsubishi Polyester Film, Inc. and SKC, Inc. (collectively, "Plaintiffs") and Defendant-Intervenors Tianjin Wanhua Co., Ltd., Sichuan Dongfang Insulating Material Co., Ltd., and Fuwei Films (Shandong) Co., Ltd. (collectively, "Defendant-Intervenors") challenge various aspects of the Final Results of Redetermination Pursuant to Court Order, ECF No. 70-1 ("Second Remand Results"). For the reasons set forth below, Commerce's Second Remand Results are sustained.

## INTRODUCTION

The court assumes familiarity with the facts of this case as set out in the previous opinion. See generally Dupont Teijin Films II, 931 F. Supp. 2d at 1299–1307. For ease of understanding, however, a brief summary is provided below.

This case involves challenges to Commerce's final results of redetermination in the second administrative review of the antidumping duty order of polyethylene terephthalate film, sheet, and strip ("PET film") from the People's Republic of China ("PRC"). See Polyethylene Terephthalate Film, Sheet, and Strip from the People's Republic of China: Final Results of the 2009–2010 Antidumping Duty Administrative Review of the Antidumping Duty Order, 77 Fed. Reg. 14,493 (Dep't Commerce Mar. 12, 2012). Initially, Commerce calculated the dumping margins using India as the primary surrogate country. Id. at 14,494. Commerce calculated weighted-average dumping margins of 8.42% for Tianjin Wanhua Co., Ltd, 10.87% for Sichuan Dongfang Insulating Material Co., Ltd., and 8.48% for both Fuwei Films (Shandong) Co., Ltd. and Shaoxing Xiangyu Green Packing Co., Ltd. Id.

In its previous order in this case, the court instructed Commerce to reconsider its surrogate country selection using 2009 Gross National Income ("GNI") data. Dupont Teijin Films II, 931 F. Supp. 2d at 1307. Commerce ignored 2009 GNI data indicating that India was no longer economically comparable to the PRC, despite the data being on the record, claiming, very belatedly, that the data were not filed early enough in the proceedings. Id. at 1299, 1301, 1307. The court held that Commerce must consider record evidence and that the parties were not given a meaningful opportunity to comment on economic comparability. Id. at 1305.

On remand, Commerce utilized the 2009 GNI data to create a new list of potential surrogate countries and selected South Africa as the primary surrogate country to use in this administrative review because South Africa is at a similar level of economic development as the PRC, it is a significant producer of comparable merchandise, and there were reliable data that could be used to value the factors of production. Second Remand Results at 1–2.[1] The change in the primary surrogate country resulted in higher margins of 19.49% for Tianjin Wanhua Co., Ltd, 14.25% for Sichuan Dongfang Insulating Material Co., Ltd., and 19.35% for both Fuwei Films (Shandong) Co., Ltd. and Shaoxing Xiangyu Green Packing Co., Ltd. Id. at 34.

Plaintiffs challenge Commerce's decision to use South Africa as the primary surrogate country for calculating the normal value of PET film, contending that South Africa is not a significant producer of comparable merchandise and that Commerce should instead use data from Thailand and/or Indonesia. Pls.' Cmts. on Commerce's Second Remand Determination 1–2, ECF No. 79 ("Pls.' Br."). Plaintiffs argue that South Africa is not a

---

[1] Commerce disagrees with the court's instruction to reconsider its surrogate country selection using the 2009 GNI data. Commerce completed its redetermination under protest on this issue. Second Remand Results at 2–3.

significant producer of comparable merchandise due to its relatively low volume of exports under Harmonized Tariff Schedule ("HTS") 3920.62, which covers PET film.[2] Id. at 3–4. Additionally, Plaintiffs contend that Commerce acted unreasonably in relying on the financial statement of South African producer Astrapak to determine that South Africa is a significant producer of comparable merchandise. Pls.' Br. 5–8.

Defendant-Intervenors agree with Commerce's rejection of Thailand as the primary surrogate country.[3] Cmts. of Def.-Intvnrs. on Second Remand Results 2, ECF No. 77 ("Def.-Intvnrs.' Br."). Defendant-Intervenors also agree that Commerce properly selected South Africa as the primary surrogate country, but they argue that Commerce failed to use all of the South African financial statements on the record in calculating the financial ratios. Id. at 3–4.

Defendant United States ("the government") responds that Commerce reasonably selected South Africa as the primary surrogate country and calculated the surrogate financial ratios in accordance with its policies and the law. Def.'s Resp. to Pls.' Cmts. Regarding the Remand Redetermination 4, ECF No. 82 ("Def.'s Br.").

---

[2] HTS 3920.62 covers "[o]ther plates, sheets, film, foil and strip, of plastics, non-cellular and not reinforced, laminated, supported or similarly combined with other materials: [o]f polycarbonates, alkyd resins, polyallyl esters or other polyesters: [o]f poly(ethylene terephthalate)."

[3] Defendant-Intervenors believe that Commerce should have continued to use India as a surrogate country. Def.-Intvnrs.' Br. 2–3. Defendant-Intervenors, however, acknowledge that Commerce's decision not to use India as a surrogate country is based upon the court's prior decisions in this matter directing Commerce to consider the 2009 GNI data of record. Id. In doing so, Commerce found India was no longer "economically comparable" to the PRC and no longer qualified as a potential surrogate country. Second Remand Results at 7. Based on the court's prior decisions instructing Commerce to consider the 2009 GNI data, Defendant-Intervenors recognize that it is inappropriate to challenge Commerce's rejection of India at this time. Def.-Intvnrs.' Br. 2. Accordingly, the court does not address this argument.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2012). The court will not uphold any determination by Commerce that is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

I.  **South Africa as the Surrogate Country**

    A.  Background

Because the PRC is considered by Commerce to be a non-market economy[4] ("NME"), much of the antidumping investigation and subsequent administrative reviews have focused on selecting surrogates for valuing the various factors of production used in manufacturing PET film in order to calculate normal value. See 19 U.S.C. § 1677b(c)(1). The statute requires that surrogate values be based, "to the extent possible," on data from an economically comparable market economy country that is a "significant producer[] of comparable merchandise." Id. § 1677b(c)(4).

"Comparable merchandise," however, is not defined in the relevant statute or regulations, and Commerce asserts that it defines comparable merchandise on a case-by-case basis. Letter from Import Administration to All Interested Parties Attach II., SRPD 2 at barcode 3154951-01 (Sept. 17, 2013), ECF No. 80 (Apr. 7, 2014) ("Policy Bulletin 04.1"). Commerce considers factors such as physical differences in products, major inputs of production, whether the product is of low or high value added, and the production process. Id. In cases where the

---

    [4] A nonmarket economy country is "any foreign country that [Commerce] determines does not operate on market principles of cost or pricing structures, so that sales of merchandise in such country do not reflect the fair value of the merchandise." 19 U.S.C. § 1677(18)(A).

Court No. 12-00088                                                                                                    Page 6

subject merchandise contains a major input that is specialized or used intensively in the production of the subject merchandise, comparable merchandise should be identified on the basis of a comparison of such major input. Id.

"Significant producer" also is not defined in the relevant statute or regulations. Id. Commerce alleges that it determines whether a country is a significant producer on a case-by-case basis as well. Id. A significant producer could be a top world producer of comparable merchandise or a country that is a net exporter of comparable merchandise, even if the country is not a top world producer. Id. Commerce, however, avoids assessing significant production relative to the NME country's production or the production of other potential surrogate countries, but instead Commerce assesses the output of the potential surrogate country in relation to world production and trade in comparable merchandise. Id. Commerce prefers to use world production data, but in many cases such data are not available and Commerce often will turn to export data. See Second Remand Results at 7–8; Def.'s Br. 12. Thus, the specific factual data relied on to make the determination of significant production will vary from case to case. Policy Bulletin 04.1; Second Remand Results at 10.

The surrogate values selected from an economically comparable significant producer are then used to compute the normal value, in this case the cost of production for a particular PET film producer from the PRC, as if that producer had operated in a hypothetical market economy. See 19 U.S.C. § 1677b(c)(1).

In the case at hand, Commerce selected South Africa as the primary surrogate country after determining that South Africa was economically comparable to the PRC, was a significant producer of comparable merchandise, and had adequate data available, as explained.

Court No. 12-00088                                                                                                       Page 7

Second Remand Results at 2.

        First, Commerce considered comparable merchandise to be products covered by HTS 3920.62 and other PET- and polymer-based products, and Commerce found that all six potential surrogate countries exported products falling under HTS 3920.62. Id. at 7–11. In addition to export data, Commerce also looked at the financial statement of Astrapak, a South African producer of packaging materials. Id. at 8, 10–11. Astrapak's Flexibles Division manufactures high-density polyethylene films, low density single- and multi-layered films, plain and printed films, co-extruded film, blown film, film for pallet stretch wrap, and industrial pallet shrink shroud. Id. at 10. All of these films are produced by melting and extruding plastics that are used for food packing. Id. Commerce determined that because these products are produced in a similar way and with similar inputs for PET film, the products were comparable to the subject merchandise. Id. at 10. Next, Commerce concluded that both Thailand and South Africa were significant producers of comparable merchandise because they manufactured and exported merchandise comparable to PET film. Id. at 12. Finally, Commerce selected South Africa as the primary surrogate country due to concerns over the reliability of the data from Thailand.[5] Id. at 2, 13.

---

    [5] Specifically, Commerce found that Polyplex Thailand received countervailable subsidies and therefore its data were not the best available information. Second Remand Results at 13–15; see 19 U.S.C. § 1677b(c)(1). It is Commerce's practice to reject financial statements of a company that Commerce has reason to believe has benefitted from countervailable subsidies, especially when other acceptable data are available. See Second Remand Results at 14. Commerce's rejection of Thailand as a surrogate country, due to the suspected countervailable subsidies in Polyplex Thailand's financial statements, appears to be supported by substantial evidence and in accordance with law, and the parties do not challenge directly Commerce's justification for rejecting the Thai data.

B.	South Africa Is a Significant Producer of Comparable Merchandise

Plaintiffs argue that South Africa is not a significant producer of comparable merchandise due to its relatively low volume of exports under HTS 3920.62 and contend that Commerce's reliance on Astrapak's financial statement to determine that South Africa is a significant producer of comparable merchandise in the light of the export data was unreasonable. Pls.' Br. at 2–8. This challenge rests on two grounds. First, Plaintiffs argue that because there is no evidence that Astrapak produces any goods falling under HTS 3920.62, the export data are corroborated and show that South Africa is not a significant producer of comparable merchandise. Id. at 7. Second, Plaintiffs argue that Commerce acted unreasonably and inconsistent with its stated policy by comparing Astrapak's production to the exports of other surrogate countries in finding that South Africa is a significant producer of comparable merchandise. Id. at 5–6.

The government responds that Commerce reasonably selected South Africa as the primary surrogate country in accordance with its policies and the law. Def.'s Br. 6–15. The government emphasizes that when making a comparable product finding, Commerce does not limit its analysis to identical merchandise—it also considers the production of comparable merchandise. Id. at 7 (citing Policy Bulletin 04.1). Commerce found products under HTS 3920.62 to be comparable because that classification covers the subject merchandise. Second Remand Results at 8. Commerce also found products with polymers as the only major input, such as flexible films or rigid product containers that specifically require PET, to be comparable merchandise. Id. at 10–11, 18–20. The government argues that Commerce, in deciding that Astrapak produces comparable merchandise, appropriately considered products falling under the

HTS heading of the subject merchandise as well as products with the same major inputs and uses as the subject merchandise to be comparable, consistent with Policy Bulletin 04.1. Def.'s Br. 7–8. The government also argues that Astrapak's production level shows that South Africa is a significant producer of merchandise comparable to PET film. Id. at 12–13.

    1.    <u>Commerce Reasonably Considered Astrapak's Merchandise to be Comparable to PET Film.</u>

Plaintiffs argue that South Africa's low ranking among exporters of goods falling under HTS 3920.62 (52nd out of 80 countries) shows that is it not a significant producer of comparable merchandise and contend that the data contained in Astrapak's financial statement corroborate, rather than rebut, the minimal production of comparable merchandise. Pls.' Br. 3–4, 7. Plaintiffs argue that Astrapak is not a producer of comparable merchandise because there is no evidence that Astrapak produces any goods falling under HTS 3920.62. Id. at 7. Thus, the only record evidence relevant to South Africa's production of comparable merchandise is the export data, which indicate that South Africa is not a significant producer. See id. This claim lacks merit.

Plaintiffs incorrectly assume that because Astrapak's products would not fall under HTS 3920.62, they are not comparable. Id.; Def.'s Br. 9–11. Aside from arguing that Astrapak's products do not fall under HTS 3920.62, plaintiffs do not actually specify why Astrapak's products are not comparable to PET film. Pls.' Br. 7. Commerce, however, is not restricted to looking at export data and the merchandise falling under the exact HTS heading covering the subject merchandise when determining if merchandise is comparable. Commerce should consider the record as a whole, including financial statements, to makes its findings, especially when the export data alone may not give an accurate picture of production. See

Court No. 12-00088                                                                                             Page 10

Dorbest Ltd. v. United States, 30 CIT 1671, 1683; 462 F. Supp. 2d 1262, 1274 (2006) (using financial statements to determine that India was a significant producer of wooden bedroom furniture based on the totality of the circumstances).

       Here, the record as a whole demonstrates that South Africa manufactured products falling under the relevant HTS heading as well as products comparable to the subject merchandise based on major inputs and uses. The export data showed only products that were exported, and they captured only a subset of all comparable merchandise, namely the products falling under HTS 3920.62. Although Astrapak's financial statement corroborates the fact that South Africa exports relatively small amounts of PET film classified under HTS 3920.62, the statement shows that Astrapak produces significant amounts of merchandise comparable to PET film that does not fall under HTS 3920.62. Commerce's decision to give little weight to South Africa's fairly low ranking in exports under HTS 3920.62 in the light of Astrapak's financial statement showing production of comparable merchandise was reasonable, supported by substantial evidence, and in accordance with law.

      2.    <u>Commerce Did Not Act Unreasonably in Comparing Astrapak's Production to the Export Levels of Other Surrogate Countries in Finding that South Africa Was a Significant Producer of Comparable Merchandise.</u>

       Based on the data on the record, Commerce determined that both South Africa and Thailand were significant producers of comparable merchandise. Second Remand Results at 9. First, Commerce looked at the export data and found that because Thailand exported over 44 million kilograms of PET film, it was a significant producer. Id. Second, Commerce found that Astrapak's Flexibles Division alone, which manufactures products comparable to PET film, as explained above, produced merchandise of greater value than the PET film exports of any

potential surrogate country.[6]  Id. at 10.  On this basis, Commerce determined that South Africa was a significant producer of comparable merchandise.  Id. at 12.

       Plaintiffs argue that Commerce was unreasonable in comparing the value of Astrapak's merchandise to the value of the PET film exports of the other potential surrogates, as doing this compares production of two potential surrogate countries, which is inconsistent with Commerce's policy.  Pls.' Br. 5–6.  The court need not decide whether comparison of potential surrogates in this manner is somehow prohibited.  Here, the government supports Commerce's comparison of Astrapak's production to other countries by explaining that the comparison was not a means of ranking the countries, but was reflecting Commerce's position that the export data alone were not sufficient to determine whether South Africa was a significant producer, as South Africa is not an export-focused country with regard to this product.[7]  Def.'s Br. 13–15.

       Commerce properly considered all record evidence in determining South Africa was a significant producer.  Because world production data were not available, Commerce reasonably looked to other sources of data on the record, including export data and Astrapak's financial statement.  See Dorbest, 30 CIT at 1683; 462 F. Supp. 2d at 1274.  In stating that Astrapak's Flexibles Division's production value was greater than the value of other potential

---

[6] Astrapak's Flexibles Division produced merchandise valued at 182,805,481.42 USD. Second Remand Results at 10.  The value of Thailand's PET film exports was 103,690,241 USD. Memorandum from Jonathan Hill to Director of AD/CVD Operations re: Selection of a Surrogate Country Attach. II, PD 34 at barcode 3037997-01 (Oct. 28, 2011), ECF No. 80 (Apr. 7, 2014).

[7] Commerce noted that only 10% of Astrapak's merchandise is exported and 90% is consumed domestically.  Second Remand Results at 22.  Because of the high amount of domestic consumption, South Africa's export data likely do not capture a significant amount of the comparable merchandise actually produced.  See id.

surrogate countries' exports, Commerce was not defining "significant" solely in relation to other surrogate countries. Rather, Commerce was using Thailand as a benchmark to determine whether South Africa's production levels would qualify it as a significant producer. If Thailand is a significant producer—and the parties do not argue that it is not—and the record showed even greater production in South Africa, then South Africa logically would be a significant producer as well. Reading the record as a whole, rather than focusing solely on the export data for HTS 3920.62, Commerce reasonably could conclude that South Africa was a significant producer of comparable merchandise. Commerce's determination that South Africa was a significant producer of comparable merchandise thus was consistent with Policy Bulletin 04.1, is supported by substantial evidence, and is in accordance with the law.

## II.     Surrogate Financial Ratios

The court now turns to Defendant-Intervenors' challenge to Commerce's calculation of the surrogate financial ratios. Commerce usually relies on public information gathered from producers of identical or comparable merchandise in the surrogate country in calculating surrogate financial ratios. 19 C.F.R. § 351.408(c)(4) (2013). When the record contains multiple contemporaneous financial statements from different producers, Commerce's practice is to average the financial statements to eliminate any potential distortions that may arise from any one producer's statement. See Dorbest Ltd. v. United States, 604 F.3d 1363, 1368, 1374 (Fed. Cir. 2010). When only a single producer's financial statements are available, however, this rationale does not apply. Under its current practice, "when considering multiple financial statements from a single company [Commerce] considers the financial statements overlapping more months of the POR to be more contemporaneous, and thus, preferable." See

Court No. 12-00088                                                                                           Page 13

Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam: Issues and Decision Memorandum for the Final Results of 2008–2009 Administrative Review, A-552-802, at 14 n.78 (July 30, 2010), available at http://enforcement.trade.gov/frn/summary/vietnam/2010-19577-1.pdf (last visited July 15, 2014).

   Two financial statements from Astrapak were placed on the record here.  The first financial statement was for the period of March 1, 2009, to February 28, 2010 ("2010 Statement").  See Second Remand Results at 29.  The second financial statement covered the period from March 1, 2010, to February 28, 2011 ("2011 Statement").  Id.  Commerce used the 2011 Statement in calculating the surrogate financial ratios, because it overlapped most with the period of review.  Id.

   Defendant-Intervenors argue that Commerce should have used a simple or weighted average of both financial statements.  Def.-Intvnrs.' Br. 3.  Defendant-Intervenors assert that the failure to average the two financial statements was unreasonable because both of Astrapak's statements are contemporaneous, no flaws have been discovered that would disqualify the use of either statement, and both statements overlap with the POR by a substantial period, four months for the 2010 Statement and eight months for the 2011 Statement.  Id. at 3.  Defendant-Intervenor's also rely upon Certain New Pneumatic Off-the-Road Tires from the People's Republic of China: Preliminary Results of the 2009–2010 Antidumping Duty Administrative Review and Intent to Rescind, in Part, 76 Fed. Reg. 62,356 (Dep't Commerce Oct. 7, 2011), and Folding Metal Tables and Chairs from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, 77 Fed. Reg. 39,680 (Dep't Commerce

Court No. 12-00088                                                                                                    Page 14

July 5, 2012), to argue that Commerce's practice is to average multiple financial statements. Def.-Intvnrs.' Br. 3–4.  The government argues that Commerce's use of only the 2011 Statement in calculating the financial ratios was proper.  Id. at 15–17.

   The record here contains two financial statements from a single company, Astrapak, and does not contain financial statements from any other South African producer of comparable merchandise.  Because the record contains the statements of only one company, Commerce's use of the financial statement that most overlapped with the POR (i.e., was the most contemporaneous) is both reasonable and consistent with its current practice.  There was no need to average the financial statements because distortions caused by relying on only one company's financial statement are not a concern when only one producer's financial statements are available.  Unless distortions are involved, Commerce may choose a simpler approach.  The court thus holds that Commerce's use of the 2011 Statement in the remand determination is supported by substantial evidence and is in accordance with law.

## CONCLUSION

   For the foregoing reasons, Commerce's Second Remand Results are SUSTAINED.  Judgement will enter accordingly.

                      /s/ Jane A. Restani
                       Jane A. Restani
                       Judge

Dated: July 22, 2014
   New York, New York